UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | |
| | ) | Case No. 13bk49315 |
| LLC 1 07CH12487, | ) | |
| | ) | Chapter 7 |
| Debtor. | ) | |
| | ) | Judge Timothy A. Barnes |

TIMOTHY A. BARNES, Judge.

<u>MEMORANDUM DECISION</u>

On September 30, 2018, exactly one year ago, the District Court vacated this court's oral decision dismissing the above-captioned case (the "<u>Case</u>") and remanded the Case "for specific findings and conclusions permitting dismissal under the Bankruptcy Code, or for further proceedings."[1] Because the underlying Motion to Dismiss[2] was fundamentally flawed—so much so that it caused the District Court to misunderstand in its entirety this court's dismissal ruling—and because the movant, the Debtor, appeared to be defunct and was no longer represented by counsel,[3] on remand and after a considerable period of time during which no party sought any form of relief from the court,[4] the court issued an Order to Show Cause,[5] asking again why the Case should not be dismissed.

At the hearing on June 5, 2019 (the "<u>Hearing</u>") on the Order to Show Cause, the court was swayed by the arguments of the United States Trustee—a party that had not appeared on the Motion to Dismiss, but who had appeared at the Hearing at the request of the court—that a legitimate purpose remained for this otherwise abusive and wasteful case and the court therefore determined that "further proceedings" were appropriate. As a result, the Motion to Dismiss was denied. Having learned from the Remand Order that this could not, as it often does, rest solely on

---

[1]    *Etter v. LLC 1 07CH12487*, 593 B.R. 315 (N.D. Ill. 2018) (the "<u>Remand Order</u>").

[2]    Motion of Debtor for Abstention and Dismissal [Dkt. No. 159] (the "<u>Motion to Dismiss</u>"). The Motion to Dismiss was filed by LLC 1 07CH12487 (the "<u>Debtor</u>") seeking voluntary dismissal of the Case.

[3]    "A corporation cannot litigate in federal court *pro se.*" *Old Ben Coal Co. v. Office of Workers' Comp. Programs*, 476 F.3d 418, 418–19 (7th Cir. 2007) (citing *Rowland v. Cal. Men's Colony*, 506 U.S. 194, 201–02 (1993); *Muzikowski v. Paramount Pictures Corp.*, 322 F.3d 918, 924 (7th Cir. 2003)).

[4]    Unlike appeals brought under the Federal Rules of Appellate Procedure, *see* Fed. R. App. P. 41, there is no process for a mandate under the Federal Rules of Bankruptcy Procedure (the "<u>Bankruptcy Rules</u>"). As such and given that we are both in the busiest bankruptcy court by case number in the country, unscheduled matters often lay idle if no party acts. Under the Local Rules of the Bankruptcy Court for the Northern District of Illinois (the "<u>Local Rules</u>"), it falls on the parties to bring such matters to the attention of the court. *See* Local Bankr. R. 9013-1(I).

[5]    Order to Show Cause [Dkt. No. 252] (the "<u>Order to Show Cause</u>"). The Order to Show cause is attached to this Memorandum Decision as "<u>Attachment A</u>".

the oral determination, the court at that time made clear to the parties that it would memorialize that ruling in writing following that denial. This Memorandum Decision does just that.

This Memorandum Decision also affords the court an opportunity to clarify the District Court's analysis in the Remand Order and to respond to what appears to be criticism directed at this court from the District Court. Because, as just noted, the Motion to Dismiss was fundamentally flawed and because this court's oral ruling was not as fulsome in communicating the basis for dismissal independent of that motion as a written ruling might have been, the Remand Order's analysis is based on a different section of the Bankruptcy Code[6] than the section upon which dismissal of this Case was actually based. As a result, the District Court was critical of and discounted this court's earnest effort to interpret the law and the facts correctly. Further, because the Remand Order was published, there is now a potential disharmony between the law in this area and that of the Remand Order. This Memorandum Decision attempts to harmonize the results, to fix what this court might have broken by failing to rule in a way that led the District Court to the right result.

As one might imagine, this Case is an extraordinary case in many ways, and not just because of the foregoing. As a result, this Memorandum Decision takes on an extraordinary form. The court will dispense with the undersigned's customary precatory opening—the recitation of jurisdiction[7]—and will instead launch straight ahead.

<u>HISTORY</u>

The history of this Case is long and disturbing on many levels. The Order to Show Cause sets forth that history—up to the point of the order's issuance only, of course—in a fair amount of detail. Because of that, the findings in the Order to Show Cause, which is attached to this Memorandum Decision as Attachment A, are adopted and incorporated as if fully set forth herein.[8]

That adoption, however, is likely frustrating to the reader by causing failure of continuity here and does not, as a matter of necessity, communicate what happened in this Case after the issuance of the Order to Show Cause and leading up to the Hearing. For that reason, the court will discuss both the prior and more recent history and thereby use this opportunity to provide some color on the issues presented here that is not evident from the unembellished factual recitations in the Order to Show Cause.

---

[6]    Title 11 of the United States Code, 11 U.S.C. § 101 *et seq.* (the "<u>Bankruptcy Code</u>").

[7]    The court adopts its most recent recitation of jurisdiction and statutory authority in the context of motions to dismiss as set forth *In re Class A Properties Five, LLC*, 600 B.R. 27, 29–30 (Bankr. N.D. Ill. 2019) (Barnes, J.). Further, a bankruptcy court must have the jurisdiction and authority to implement an order of remand from the Article III District Court. For those reasons, the court concludes that it has the jurisdiction and statutory and constitutional authority to hear and determine this matter and to enter final orders with respect to the Motion to Dismiss and the Remand Order.

[8]    To the extent of any conflict (for example, a term defined both in this Memorandum Decision and the Order to Show Cause), this Memorandum Decision governs.

A.    Prior to Remand

As the facts of the Order to Show Cause demonstrate, this Case has been largely a waste of time for all concerned. It has, unquestionably, been a waste of this court's limited time and resources. That is unusual for a chapter 7 liquidation of a defunct business.

The Case was commenced in 2013. In the more than five years since then, the only thing that has happened of any lasting effect is that relief from stay has been granted several times.

At the time of commencement, the Debtor's Schedules indicated limited real estate assets and tax lien claims against the same. More than a year after the commencement of the Case, however, an unscheduled creditor became involved. That creditor, Kirk Etter ("Etter"), through filings seeking discovery from the chapter 7 trustee (the "Trustee") and separately an accounting from either the Debtor or the Trustee, appeared poised to usurp the role of the Trustee in this Case.

That initial foray was largely unsuccessful, however, both because Etter failed to appear and prosecute the former request and, with respect to the latter, because the Trustee opposed the extraordinary relief requested and challenged Etter's standing as an unscheduled creditor with no claim on file.

Subsequently, the Case seemed to go in fits and starts. The Debtor sought voluntary dismissal of the Case.[9] All of the active parties, namely the Debtor, Etter and the Trustee agreed at that time to dismissal, only to have the agreement fall apart before an order could be entered. The dismissal motion was thereafter withdrawn and the Debtor's counsel withdrew and was replaced. The parties nonetheless continued to work together to tie up details in order to dismiss the Case. While the Trustee found assets in the Debtor's bankruptcy estate to administer and Etter, in turn, filed a secured proof of claim,[10] the Trustee retained an accountant to assist him in preparing a final tax return and the Case seemed poised once again to conclude.

Here is where things began to go awry, if they had not already. In order to complete the tax return for the estate, the Trustee needed to see the Debtor's tax returns which had not, for some reason, yet been produced. Rather than the Trustee seeking those returns, however, Etter once again stepped into the Trustee's shoes and filed a motion to compel the Debtor to turn over the same. Recall that Etter's first filings in the Case had been unsuccessful. So too would this have been, if the Trustee had not appeared and asked the court to grant Etter's request and thus the

---

[9]    This first Motion for Voluntary Dismissal [Dkt. No. 41] cited no case law and no statutory authority, but argued that no bankruptcy purpose existed for the case as the only scheduled creditor—the tax lien holder—had obtained relief from stay and the remaining party in interest—Etter—would not be prejudiced by dismissal.

[10]    Claim 1-1, filed on February 8, 2016, asserts a secured claim in the amount of $1,114,204.62 (the "Etter Claim"). To date, the Etter Claim remains the only claim filed in this Case.

bankruptcy estate the cost of making a duplicate one.[11]  In the face of the Trustee's support, the court granted Etter's motion instead of requiring an appropriate one from the Trustee.[12]

That was a mistake.  In so doing, the court inadvertently set into motion a chain of events that included years of scorched-earth litigation, delay and frustration.  The court and other parties were inundated with Etter's further discovery requests, multiple motions to compel and numerous motions for sanctions.  Many of these motions, as were the first motions brought by Etter, were brought in violation of the Local Rules and were denied for such failures.[13]

Further complicating matters, the Trustee changed his position on more than one occasion on whether a bankruptcy purpose existed for the Case, ultimately concluding that such a purpose existed.  That final position coincided with an agreement with Etter regarding the Trustee's fees, the existence of which was disclosed to the court when the court questioned the changing positions. This history is set forth in more detail in the Order to Show Cause.

During this time, the Debtor again requested voluntary dismissal of the Case.  The Motion to Dismiss sought dismissal under section 305, the abstention provision of the Bankruptcy Code, but the Debtor's arguments solely more aligned with the "for cause" provisions of section 707, that this Case was a two-party dispute.[14]

The court noted early on that the Debtor, in seeking to voluntarily dismiss this Case as a two-party dispute, was not really invoking the court's authority under section 305 but rather was

---

[11]     While the scope of Rule 2004 examinations is broad, *In re Wilcher*, 56 B.R. 428, 433 (Bankr. N.D. Ill. 1985) (Martin, J.), it is not limitless, *see, e.g., In re Kelton*, 389 B.R. 812, 819–20 (Bankr. S.D. Ga. 2008) (discussing various limitations), and the relief thereunder is discretionary.  *See* Fed. R. Bankr. P. 2004(a) (the court "may order the examination").  One accepted limitation is that a Rule 2004 examination may not be used to harass a debtor.  *In re Cambridge Analytica LLC*, 600 B.R. 750, 752 (Bankr. S.D.N.Y. 2019) (citing *In re Mittco, Inc.*, 44 B.R. 35, 36 (Bankr. E.D. Wis. 1984)).  When a party other than a trustee seeks through a Rule 2004 examination to duplicate the role of the trustee as set forth in section 704 of the Bankruptcy Code and other applicable law, that request smacks of harassment and, absent a showing to the contrary or special circumstances, must be denied.

[12]     In granting Etter's request, the court specified that any production of documents must be given to the Trustee, not Etter, and that the production was limited to those documents necessary to close the Case. Order to Show Cause, at ¶ 16.

[13]     Etter's counsel also displayed a cavalier attitude towards paying the costs for the mistaken filings by attempting to obtain the same relief in indirect ways, without paying the cost of refiling in an appropriate manner and as instructed by the court.

[14]     The Motion to Dismiss cites both to section 305 of the Bankruptcy Code and a series of cases. Those cases, however, are a mix of dismissal for cause and dismissal in the context of abstention.  *See, e.g., Efron v. Candelario (In re Efron)*, 529 B.R. 396, 406 (B.A.P. 1st Cir. 2015) (affirming a bankruptcy court's decision on its own order to show cause—over a debtor's objection—*both* to abstain under section 305 and to dismiss a case for cause under section 1112 of the Bankruptcy Code, because the case was a two-party dispute); *In re Mazzocone*, 183 B.R. 402, 420–21 (Bankr. E.D. Pa. 1995) (choosing, over a debtor's objection, to suspend proceedings under section 305 despite finding cause to dismiss under section 1112).  Section 1112, of course, has a best interest of creditors requirement similar to the one analyzed at length by the District Court in the Remand Order.  Section 707 does not.  All of the cases cited by the Debtor in its Motion to Dismiss appear to be ones in which a party other than the debtor raised the issue of dismissal or abstention.

asking for dismissal for cause. As this is a chapter 7 case, that means dismissal for cause under the more specific chapter 7 dismissal provision, 11 U.S.C. § 707(a), not the more general dismissal provision in the context of abstention. 11 U.S.C. § 305.

Despite the court's direction, the parties' briefing on this issue was unhelpful. After a number of hearings where the parties debated whether cause under section 707 existed, the court ultimately found that it did and so dismissed.

In doing so, however, this court made a second, fundamental mistake. It ruled orally and, in so doing, relied in part on what it had previously stated at the hearings leading up to the dismissal hearing and thus the shared knowledge of the parties of what had brought the Case to the point of dismissal. That put the District Court in the unenviable position of, in order to understand what the court ruled, having either to rely on the parties to clarify the less-than-clear record—which as provided to the District Court was limited to solely what Etter, the only party appearing on the appeal, chose to provide—or to conduct its own investigation into the record. The District Court chose the former and also chose to make certain assumptions on the limited record before it. As a result, not having the benefit of the history of the Case or an even-handed account of what had transpired, it is understandable that certain of those assumptions were mistaken. This court bears the ultimate responsibility for those errors.

The first mistaken assumption is that this court ruled under section 305 and, in so doing, provided no analysis of the factors of that section. The latter part of that assumption is unquestionably true. This court did not analyze those factors and those factors were not and are not applicable here for the reasons discussed herein. The former part is, of course, not correct. What this court very clearly did was dismiss for cause under section 707 of the Bankruptcy Code.

In ruling under section 707, the court recited at length the cause by which this Case was being dismissed. In so doing, the court named and relied on existing case law in this jurisdiction regarding dismissal of two-party disputes "for cause." That is all that is required for dismissal under section 707(a). The District Court, though noting that it was unsure whether the court had ruled under section 305 or section 707, made no effort to review the court's ruling under section 707.[15] That omission calls into question just what was communicated to the District Court on what was a one-sided appeal.[16]

The second mistaken assumption is, impliedly, that this court somehow gave the parties' arguments short shrift or failed to fully comprehend the issue before it. That is clear throughout but is stated specifically in one of the District Court's footnotes, where, among other criticisms, the court superfluously observed that this court "cited just one case cited by the Trustee in opposition

---

[15]     After a lengthy analysis of the standards of dismissal under section 305, the District Court dismissed by way of a footnote the court's analysis under section 707. *Etter*, 593 B.R. at 319 n.4.

[16]     As noted earlier, the Debtor was by all appearances defunct and, after dismissal of the Case, the Debtor's counsel withdrew from the Case. Order Allowing John H. Redfield and The Firm of Crane, Heyman, Simon, Welch & Clar to Withdraw Their Appearance as Attorney for Debtor [Dkt. No. 225]. The District Court also allowed the Debtor's counsel to withdraw. Order [Granting Leave to Withdraw] [Dkt. No. 14 in *Etter v. LLC 1 07CH12487*, Case No. 17-cv-07642 (N.D. Ill.)]. As a result, no one participated in the appeal on behalf of the Debtor and no party on appeal explained the context and history of this court's rulings.

to the motion to dismiss ....” *Etter*, 593 B.R. at 320 n.5. Again, that is both true and irrelevant. The case cited, *In re Int'l Zinc Coatings & Chem. Corp.*, 355 B.R. 76 (Bankr. N.D. Ill. 2006) (Goldgar, J.), however, is particularly instructive. In *International Zinc*, the court was—as is this Case here—faced with a jumbled set of arguments that could have been attributed either to section 305 or section 707. *See id.* at 82 n.1. There the debtor had moved for dismissal but cited no caselaw. *Id.* While the debtor’s arguments appeared to the court to be ones under section 305, the responding creditors propounded arguments against dismissal under section 707. *Id.* There the court chose to “construe” the motion to dismiss as one under section 305, in exactly the same way as this court chose to construe the motion before it as one under section 707.

The court’s citing to only one case raised by the parties opposing dismissal does not mean the court did not consider their arguments. The court simply addressed, as it is required to do, the standards of the statute actually applicable to the matter before it and applied the case law relevant to that statute. As is discussed below, nothing more is required.

B.    The Proceedings on Appeal

On appeal, only Etter appeared and was heard by the District Court. Etter advanced a series of arguments under section 305 as to why this court’s dismissal was in error. Those arguments were, of course, self-serving and designed to lead the District Court to the conclusion it reached.

The District Court, though it admitted it did not know whether this court had dismissed under section 305 and 707, *see Etter*, 593 B.R. at 319–20 n.5, assumed the application of section of 305. In so doing, it did not appear to credit in its review this court’s earnest effort to interpret the law and the facts correctly. Further, though it had nothing before it other than that provided by Etter, *id.* at 319 (stating the court relief on the transcript of the final dismissal hearing and the motions of the parties), it did not just simply remand for clarification as it might have.

Instead, the District Court wrote in depth on section 305, criticized this court for failing to live up to the standards it assumed this court had applied and published that opinion.

C.    After the Remand Order

Despite being predicated on misplaced assumptions regarding this court’s ruling, the Remand Order is the law of this Case. As such, its direction to issue specific findings and conclusions binds this court and the parties. Such direction was phrased in the alternative, however, providing also the opportunity to conduct “further proceedings.”

As noted above, there is no mechanism in the Bankruptcy Rules or otherwise for handling such remands. That resulted in the Case sitting idle for some time. No party asked the court to reconsider the Motion to Dismiss in light of the District Court’s ruling. That changed in February of this year, when Etter resumed his problematic motion practice against the Debtor and related parties.[17]

Nonetheless, being thus informed about the continued existence of the Case, the court issued the Order to Show Cause so as to comply with the Remand Order. By issuing the Order to

---

[17]     The Order to Show Cause sets forth the many problems with this new round of motions.

Show Cause, the court put the issue of dismissal back on for hearing. In order to avoid further confusion and make a clearer record for the District Court, should one be needed, the court in the Order to Show Cause expressly narrowed the issue before the court to that on which had it previously ruled, dismissal under section 707.

The Order to Show Cause set specific deadlines for filings relating thereto and made clear that the court would consider no matters in the Case until the Order to Show Cause and the filings contemplated therein had been resolved. It set the Hearing for that consideration for May 14, 2019, which hearing was continued to June 5, 2019.

Both Etter and the Trustee filed timely responses to the Order to Show Cause. Etter Response to Order to Show Cause Why Case Should Not Be Dismissed [Dkt. No. 271] ("Etter's Response"); Trustee's Response to Order to Show Cause [Dkt. No. 272] ("Trustee's Response" and together with Etter's Response, the "Responses"). The Debtor failed to respond. No party filed a reply to the Responses.

Etter, in typical fashion, ignored the restrictions against other matters set forth in the Order to Show Cause. In addition to Etter's Response, Etter's counsel filed requests for sanctions against Joseph Varan ("Varan"), the Debtor's former manager, and for an order of contempt against Jaroslaw Kurzac ("Kurzac"), the Debtor's alleged most recent manager. Motion for Order Pursuant to Rule 9011 and Section 105 [Dkt. No. 255] (against Varan); Motion for Order Pursuant to Section 105 [Dkt. No. 256] (against Kurzac). Etter also filed a request that the court alter the Order to Show Cause in accordance with Etter's suggested edits. Motion to Reconsider/Alter or Amend Judgment or Order [Dkt. No. 260]. All of these additional filings were denied without hearing because the hearings were scheduled in violation of the Local Rules as the hearings set by Etter's counsel were outside of the permissible notice period. Local Rules 9013-1(E)(2), (G). Such requests could also have been denied for violating the restrictions set forth in the Order to Show Cause.

Etter thereafter refiled his requests for an order compelling the Debtor to comply with discovery, for sanctions against Varan and for an order of contempt against Kurzac. Motion to Compel—Debtor [Dkt. No. 283]; Motion for Order Pursuant to Rule 9011 and Section 105 [Dkt. No. 284] (against Varan); Motion for Order Pursuant to Section 105 [Dkt. No. 285] (against Kurzac). This time Etter's counsel complied with the Local Rules, noticing them for hearing within 30 days and thereby alongside the Order to Show Cause.[18] Etter did not refile his request to edit the Order to Show Cause.

Also prior to the hearing on the Order to Show Cause, the Village of Maywood (the "Village") filed a motion for relief from stay. Amended Motion for Relief from Automatic Stay [Dkt. No. 262] (the "Stay Relief Motion"). As the Stay Relief Motion suggested that another creditor was active in the Case and because the court could not conclude, given the restriction in the Order to Show Cause on considering other matters prior to the resolution of the Order to Show

---

[18]   While in technical compliance with the Order to Show Cause (as these new requests were scheduled to be heard alongside the Order to Show Cause and not before), these requests nonetheless violated the clear intent of the Order to Show Cause that the court and no party should be further burdened unless and until the court determined the propriety of continuing the Case.

Cause, that all affected parties would attend a hearing on such precluded interim relief, the court continued the Stay Relief Motion to the Hearing.[19]

At the June 5, 2019 Hearing, Etter's counsel, the Trustee and counsel for the Trustee, a trial attorney for the United States Trustee (the "United States Trustee") and Kurzac appeared. Kurzac was not permitted to address the Court on behalf of the Debtor as the Debtor, a legal entity, may only be represented by counsel and Kurzac is not an attorney. *Rowland,* 506 U.S. at 201–02; *Old Ben Coal Co.,* 476 F.3d at 418–19. As one of Etter's pending motions did implicate Kurzac individually, however, Kurzac was allowed to participate at the Hearing with respect to the issues raised therein.

At the Hearing, the court began by stating again that the collective action purpose of bankruptcy is thwarted by allowing a single creditor to use a bankruptcy case as a collection tool and observed that, despite the Village's Stay Relief Motion and some of the arguments to the contrary in the Responses, Etter remained the only creditor that would benefit from the Case continuing. The court also expressed concern over Etter's ongoing, improper filings and noted that the propriety of Etter's actions would be even more questionable if Etter intended to add the costs thereof to his debt. The court then turned to each of the parties to address the court's concerns.

Etter argued against dismissal on all counts, relying in large part on the unfilled discovery orders as grounds to keep the Case pending. Etter argued that because the Debtor voluntarily filed the Case in order to utilize the various protections of the Bankruptcy Code and that the Debtor only sought dismissal after realizing that these benefits had run their course, dismissal will only benefit the Debtor and will substantially prejudice Etter and the Trustee. Etter's Resp., at pp. 7–8. In support of this position, Etter outlined a number of alleged abuses of the bankruptcy system, including the filing of allegedly false schedules, the alleged concealment of property of the estate and the avoidance of discovery orders. *Id.* at p. 8.

In Etter's Response and at the Hearing, Etter also argued that dismissal is not warranted under section 707(a) because such a section may only be used by a creditor seeking dismissal of a bankruptcy case. Etter's Resp., at p. 4. Etter argued that dismissal of the Case would prejudice Etter would be forced to restart his attempts to collect against the Debtor and possibly have to argue to the state court that the statute of limitations had not run on any fraudulent transfer action. *Id.* at p. 10* (*née 2).[20] Despite arguing against dismissal, Etter's Response argues throughout about the delay in the Case and the prejudice resulting from such delay. *See* Etter's Resp., *passim* & at pp. 8–13* (*née 5). In so doing, Etter has perhaps inadvertently established the elements of dismissal under section 707(a)(1).

The Trustee argued the position advanced both by him and Etter that dismissal was procedurally improper because the Motion to Dismiss was filed by the Debtor, and dismissal for cause is a creditor remedy. In the Trustee's Response and at the Hearing, the Trustee further adopted many of the portions of Etter's Response arguing against dismissal and the various prejudicial effects that would accompany dismissal of the Debtor's Case. Trustee's Resp., at p. 2.

---

[19]     The Stay Relief Motion alleged that the value of the liens the Village holds against the Debtor's real property is $3,823,404.33. According to the Village, "[t]his amount does not include penalties that result for non-payment of taxes related to the [Debtor's real property]." Stay Relief Motion, at p. 8.

[20]     Page 10 is in actuality numbered page 2 as the page numbering restarts after page 8.

The Trustee's Response addresses the court's ability to move to dismiss the Case under section 707(a), but acknowledges that the Remand Order addressed dismissal under sections 305 and 707. Trustee's Resp., at p. 3. The Trustee, for that reason, also addresses whether dismissal of this Case is appropriate under section 305 of the Bankruptcy Code. *Id.* Under either section 305 or section 707(a) of the Bankruptcy Code, the Trustee argued that dismissal is not appropriate because more than one creditor was active in the Case and because dismissal would reward the Debtor's noncompliance and alleged false statements in its schedules, all establishing a bad standard for cases in the future. *Id.* at pp. 8–12.

Also appearing and arguing at the Hearing was the United States Trustee. The United States Trustee, as did Etter and the Trustee, challenged the Debtor's motivation in filing a chapter 7 case. The United States Trustee was particularly troubled in light of the Debtor's inability to receive a discharge as a corporate entity. *See* 11 U.S.C. § 727(a)(1). The United States Trustee appeared to agree with Etter and the Trustee that dismissal under section 707(a) was procedurally improper because the Motion to Dismiss was filed by the Debtor, and dismissal under section 707 was a creditor remedy.

As to the changing positions of the Trustee on dismissal in light of the cost sharing agreement, though, the United States Trustee disappointingly did not take a position. Despite what the Trustee had previously informed the court when questioned on the changes, both Etter and the Trustee appeared to argue at the Hearing that no such agreement was in fact in place.

While the court is disappointed with the United States Trustee's failure to review the Trustee's change of positions in this Case and such changes are unquestionably germane to the decision,[21] it was the United States Trustee's articulation of possible abuse by the Debtor that was the most persuasive by arguing, as did others, that the Debtor had used this Case to hold back Etter while collecting and disposing of postpetition rents that might otherwise have been Etter's collateral.

---

[21]     The court ordinarily affords great weight to the considerations of the case-specific trustees appointed by the United States Trustee. That is because such trustees are charged with broad-ranging fiduciary obligations that should cause their decisions to be more neutral than self-serving positions of individual parties. *See, e.g.*, 11 U.S.C. § 704(a)(1) (charging the trustee with acting in a manner "compatible with the best interests of parties in interest"). When, however, a trustee aligns him or herself with an individual party's position in a way that appears to be driven by the trustee's desire to be paid, it calls into question both whether the trustee is fulfilling its fiduciary obligations and whether the positions taken are truly neutral. Trustees who make side agreements with creditors regarding the trustee's compensation do so at both parties' peril. *See, e.g.*, *Walsh v. Northwestern Nat'l Ins. Co. of Milwaukee, Wis.* (*In re Ferrante*), 51 F.3d 1473, 1479 (9th Cir. 1995) (trustee's agreement to accept proceeds of sale of creditor's collateral in compensation for sale fee was improper—such proceeds must instead be distributed through the bankruptcy estate and thereby in accordance with the Bankruptcy Code); *In re Dinsmore Tire Ctr., Inc.*, 81 B.R. 136, 138 (Bankr. S.D. Fla. 1987) (trustee may not make a side agreement circumventing the statutory compensation mechanisms and constraints set forth in the Bankruptcy Code). Recall that in this Case, the Trustee withdrew his objection to the Etter Claim. Further, the Trustee changed his position regarding dismissal and, when questioned by the court at a hearing on July 17, 2017, stated that "as Etter had agreed to ensure that the Trustee's costs of collecting on Etter's behalf would be paid, there now existed a bankruptcy purpose to the case." Order to Show Cause, at ¶ 20. The Trustee's position regarding dismissal in this case is not, therefore, the neutral position the court would ordinarily expect a case trustee to have.

In light of this articulation, the court concluded that it would be willing to allow the Case to continue but only if reasonable constraints were in place to prevent what had happened in the past from recurring.

In response to these statements, Etter's counsel stated that though Etter wanted the Debtor held accountable before the Case was concluded, Etter was willing to transfer or withdraw his repeated requests for orders for sanctions, contempt and compliance if the Trustee were to "take the helm." Etter's counsel stated that Etter was "held hostage" by this Case and that he just wants it to be concluded. Though those positions are remarkably different from the picture painted by Etter's actions in the Case, his position in his Response and the prolonging of this Case by his appealing the dismissal, this most recent position is consistent with the court's admonishments to Etter's counsel in 2016 and 2017 that he was overstepping into the Trustee's role. Had Etter stayed in his lane, so to speak, this Case might be over and done with today.

As a result, the court concluded that if the Case were allowed to continue, it would only be so with the Trustee being the entity to seek relief against the Debtor and its officers for the alleged transfers of the postpetition rent, if such relief was appropriate. Further, the court concluded that actions by the Trustee were to be compensated in accordance with the statutory methods and constraints set forth in the Bankruptcy Code—with no side compensation agreements. Both of these restraints are consistent with this being a bankruptcy case rather than a collection action for one creditor.

In light of all the foregoing, Etter withdrew his pending motions.[22] Further and as there was no objection thereto, the court then granted the Stay Relief Motion. Finally, the court provisionally concluded the Order to Show Cause and, both for the foregoing reasons and because the Debtor had failed to appear and prosecute the Motion to Dismiss on remand, Local Bankr. R. 9013-1(H), denied the Motion to Dismiss, with this Memorandum Decision to follow.

DISCUSSION

A.  <u>Dismissal of Bankruptcy Cases</u>

The procedures for dismissing bankruptcy cases are far from clear. Nonbankruptcy courts, which are used to the ordinary rules of dismissal of litigation under the Federal Rules of Civil Procedure for civil matters, *see* Fed. R. Civ. P. 41, can easily be forgiven for not understanding how such rules differ in bankruptcy. While a counterpart to the foregoing rule exists, *see* Fed. R. Civ. P. 7041, such rule only applies to conclude adversary proceedings and contested matters.

Dismissal of bankruptcy cases themselves, on the other hand, can happen in multiple ways. There is the chapter-specific dismissal provision, the one-off dismissal provisions peppered throughout the Bankruptcy Code and the dismissal as an alternative to abstention set forth in section 305. There is also the bankruptcy court's inherent authority to control matters before it, which is no different than that of any court of the United States.

---

[22]    Had such motions not been withdrawn, the requests for relief against the Debtor would again have been denied for procedural violations—in this instance, the failure to serve the Debtor.

Because both the parties and the District Court in many ways treat these methods of dismissal as interchangeable, it is worth pointing out that they are not. That requires looking at the individual ways a case may be dismissed and comparing and contrasting them against each other.

1. *Chapter-Specific Dismissal*

The Bankruptcy Code is organized into two major divisions—the first consisting of general provisions set forth in chapters one, three and five, and the second consisting of the subsequent chapters which are specific to the form of relief sought in the Case. The general chapters apply to the subsequent chapters, 11 U.S.C. § 103(a), but give way to the more specific provisions in the subsequent chapters if there is a conflict. *Compare* 11 U.S.C. § 541(a) (defining property of the estate in bankruptcy cases) *with* 11 U.S.C. § 1306(a) (providing a chapter 13-specific definition of property of the estate). A court may not use the general authority in the first three chapters of the Bankruptcy Code to override the specific provisions of the later chapters. *See In re Fesco Plastics Corp., Inc.*, 996 F.2d 152, 154–55 (7th Cir. 1994) (saying with respect to the court's authority under section 105, "when a specific Code section addresses an issue, a court may not employ [the general 105 powers] to achieve a result not contemplated" by those specific constraints).

Each of the specific, later chapters has a specific provision governing dismissal of a case under that chapter. *See, e.g.*, 11 U.S.C. § 707 (chapter 7 dismissal or conversion); 11 U.S.C. § 1112 (chapter 11 conversion or dismissal); 11 U.S.C. § 1307 (chapter 13 conversion or dismissal); *see also* 11 U.S.C. § 930 (chapter 9 dismissal), 11 U.S.C. § 1208 (chapter 12 conversion or dismissal).

Further, the Bankruptcy Rules give specific rules for dismissing cases under these chapters, Fed. R. Bankr. P. 1017 ("Dismissal or Conversion of Case; Suspension"), and provide that dismissal under these circumstances is a contested matter. Fed. R. Bankr. P. 1017(f)(1); *see also* Fed. R. Bankr. P. 9014. That same dismissal Rule references section 305, but only with respect to suspension of a case thereunder. Fed. R. Bankr. P. 1017(d).

Taken together, these Bankruptcy Code sections and Bankruptcy Rules paint the picture of how, absent some more specific provision, a bankruptcy case is dismissed under each specific chapter.

2. *Section-Specific Dismissal*

In addition to the foregoing, in at least one instance, a Bankruptcy Code section acts to independently mandate dismissal. Section 521, which governs most of a bankrupt debtor's duties under the Bankruptcy Code, requires the submission of various schedules, statements and other financial information. *See, e.g.*, 11 U.S.C. § 521(a)–(d), *et seq.* Within section 521 are several provisions mandating dismissal for failure to comply with these disclosure requirements. *See* 11 U.S.C. §§ 521(e)(2)(B), (C); 11 U.S.C. § 521(i).

Section 521(e) provides that, if a debtor fails to provide in a timely manner the debtor's most recent tax return to the trustee or, upon timely request, to a creditor, "the court shall dismiss the case unless the debtor demonstrates that a failure to so comply is due to circumstances beyond the control of the debtor." 11 U.S.C. § 521(e)(2)(B). The same section further provides for a return or transcript provided late to the trustee, the debtor must also provide the return or transcript to a creditor so requesting. If the debtor fails to do so, "the court shall dismiss the case unless the

debtor demonstrates that a failure to provide a copy of such tax return or such transcript is due to circumstances beyond the control of the debtor." 11 U.S.C. § 521(e)(2)(C).

Section 521(i) is even more direct, stating that if a debtor fails to provide the information required under section 521(a)(1) within 45 days of the commencement of the bankruptcy case, "the case shall be automatically dismissed effective on the 46th day after the date of the filing of the petition." 11 U.S.C. § 521(i)(1). Any party in interest may request such an order of dismissal from the court and, if requested, the court must enter the order "within 7 days after such request." 11 U.S.C. § 521(i)(3). It has been held that, other than a built-in extension provision, *Miller v. Marshall*, 457 B.R. 684, 691 (N.D. Ill. 2011), the automatic nature of the dismissal under section 521(i) takes away any discretion of the bankruptcy court regarding dismissal. *In re Lugo*, 592 B.R. 843, 846 (Bankr. N.D. Ind. 2018) ("Much like Cinderella's pumpkin at midnight, if the required information has not been filed by the statutory deadline the magic ends and the case is automatically dismissed by operation of law on day 46.").

   3.   *Dismissal in the Context of Abstention*

As the Remand Order notes in great detail, there is authority in the Bankruptcy Code to dismiss a case in the context of abstention. 11 U.S.C. § 305 (titled "Abstention"). Section 305 provides that, if the factors for abstention are met, a court may dismiss or suspend proceedings. *Id.* at § 305(a). Chief amongst those factors is that "the interests of creditors and the debtor would be better served by such dismissal or suspension." *Id.* at § 305(a)(1).

The District Court makes much of the requirement to determine whether dismissal in this context better serves the interests of creditors than the continuance of the bankruptcy case. *See, e.g., Etter*, 593 B.R. at 320. That is tautological. Had this court dismissed under section 305, it would have considered those factors.

By titling section 305 as abstention, though not using the term abstain or abstention therein, Congress has sent somewhat of a mixed message.

The general rules of statutory construction tell us that the headings of a statutory provisions are meaningful. *Bailey v. United States,* 516 U.S. 137, 145 (1995) (the court must look to not just the bare meaning of statutory provisions but their meaning in the context of their placement and purpose within the statutory scheme); *Porter v. Nussle,* 534 U.S. 516, 528, (2002) (headings "are tools available for the resolution of a doubt about the meaning of a statute.").

Here, the dismissal noted by section 305 unquestionably must be that made in the context of a request for abstention. Any other reading gives rise to the doubt that *Porter v. Nussle* seeks to avoid. Otherwise, the Bankruptcy Code's own rules of construction, *see* 11 U.S.C. §§ 102, 103, would require a bankruptcy court to determine what is in the best interests of creditors for *all* dismissals in bankruptcy, not just those in that limited context. This would lead to the absurd result of requiring a showing of the best interests of creditors for dismissals set forth elsewhere in the statute. *See, e.g.,* 11 U.S.C. §§ 521(e), (i). The automatic dismissal provisions in these sections, *In re Lugo,* 592 B.R. at 846, would revert to being discretionary.

Thus the only unambiguous reading of section 305's dismissal provision is that it is specific to the circumstances of abstention, not applicable generally. The Debtor mistook this in the Motion

to Dismiss as a number of cases dismissing two-party disputes do so under section 305. *See, e.g., Int'l Zinc Coatings*, 355 B.R. at 88. As discussed below, however, that is appropriate when what the court is doing is abstaining in favor of pending litigation, as was the case in *International Zinc*. *Id.* at 79–81 (describing the four products liability actions in Louisiana that the bankruptcy court abstained in favor of).

### 4.    *The Bankruptcy Court's Inherent Power to Dismiss*

One final note on sources of dismissal authority here. At least one Circuit Court has stated that a bankruptcy court has inherent authority to dismiss cases. *See Banque de Financement, S. A. v. First Nat'l Bank of Bos. (In re Banque de Financement, S. A.)*, 568 F.2d 911, 915 (2d Cir. 1977). In *Banque de Financement*, the Second Circuit Court of Appeals analyzed the bankruptcy court's broad authority to govern matters before it, including with respect to dismissals. It described the interaction between the Bankruptcy Code's provisions and the court's authority as follows: "Broad as such inherent power is, the circumstances under which it may be invoked are limited by the express terms of the Bankruptcy Act." *Id.* Such would presumably hold true under the Bankruptcy Code. The bankruptcy court's authority to dismiss, while broad, must be exercised within the strictures of the Bankruptcy Code itself.

### B.    Dismissal of This Case

Having identified the alternate sources of dismissal authority available to the bankruptcy court, it is useful now to consider the circumstances under which this court chose to dismiss for cause under section 707(a), and in so doing put to rest some of the arguments of the parties in this regard.

### 1.    *Two-Party Dispute Cases May Be Dismissed for Cause*

The Bankruptcy Code states that "[t]he court may dismiss a case … only for cause." 11 U.S.C. § 707(a). It thereafter provides a list of causes, but such list is introduced by "including" and thus is nonexhaustive. 11 U.S.C. § 102(3) (defining "including," for purposes of the Bankruptcy Code, to be "not limiting"); *In re Schwartz*, 799 F.3d 760, 764 (7th Cir. 2015) ("If you tell your maid to iron your clothes, including your Bond Street tuxedo and its cummerbund, there is no implication that [he or] she is not to iron your other clothes."); *Novak v. Wagnitz (In re Wagnitz)*, Case No. 03 C 5106, 2004 WL 626821, at *3 (N.D. Ill. Mar. 29, 2004) ("The enumerated grounds for a 'for cause' dismissal are not exhaustive, but merely illustrative.").

There is no question that bankruptcy courts have broad authority to determine what constitutes "cause" to dismiss a chapter 7 case. 11 U.S.C. § 707(a); *see, e.g., Krueger v. Torres (In re Krueger)*, 812 F.3d 365, 370-71 (5th Cir. 2016). There is ample authority to dismiss a bankruptcy case for cause under section 707(a) where, in the court's view, the case serves no legitimate bankruptcy purpose. *See Wilk Auslander LLP v. Murray (In re Murray)*, 565 B.R. 527, 534 (S.D.N.Y. 2017) (no abuse of discretion for bankruptcy court when deciding to dismiss under "for cause" dismissal provision an involuntary chapter 7 case that was basically a two-party dispute between debtor and single, petitioning creditor); *see also Wilk Auslander LLP v. Murray (In re Murray)*, 900 F.3d 53, 63 (2d Cir. 2018) (the bankruptcy court "appropriately recognized" the public interest and the policy goals of the Bankruptcy Code when dismissing involuntary petition due to the parties exploiting the bankruptcy system, "especially when adequate remedies exist in state courts."); *In re Weeks*, 306 B.R.

587, 590 (Bankr. E.D. Mich. 2004) (the purpose of allowing cases to be dismissed for cause under section 707(a) is "to protect the integrity of the bankruptcy system"); *Indus. Ins. Servs., Inc. v. Zick (In re Zick)*, 931 F.2d 1124, 1129 (6th Cir. 1991); *In re Schwartz*, 532 B.R. 710, 716 (Bankr. N.D. Ill.) (Hollis, J.), *aff'd*, 799 F.3d 760 (7th Cir. 2015); *In re Motaharnia*, 215 B.R. 63, 67 (Bankr. C.D. Cal. 1997).

The Court of Appeals for the Seventh Circuit has stated that "[t]he principal function of bankruptcy law is to determine and implement in a single collective proceeding the entitlements of all concerned." *In re Am. Reserve Corp.*, 840 F.2d 487, 489 (7th Cir. 1988). There the Seventh Circuit observed one of the fundamental aspects of bankruptcy's nature—that bankruptcy is a collective process. That observation has been made by the Seventh Circuit on a number of occasions, most recently in determining that excluding stale claims from the bankruptcy process worked against the fundamental nature of bankruptcy in this regard. *Owens v. LVNV Funding, LLC*, 832 F.3d 726, 732 (7th Cir. 2016); *see also Levit v. Ingersoll Rand Fin. Corp.*, 874 F.2d 1186, 1194 (7th Cir. 1989). This court observed the same in the same context. *Glenn v. Cavalry Invs. LLC (In re Glenn)*, 542 B.R. 833, 841 (Bankr. N.D. Ill. 2016) (Barnes, J.).

That bankruptcy is a collective process is underscored by the line of cases that find cause to dismiss a bankruptcy when the bankruptcy embodies a dispute between a debtor and a single creditor. *See, e.g., Am. Ins. Serv. Co. v. WGIN Enterprises, LLC*, Case No. 16-CV-03525, 2016 WL 5391390, at *2–3 (N.D. Ill. Sept. 27, 2016) (citing to cases on this point).

As those courts have observed, "a failure to present a bankruptcy case implicating any of the policies underlying the chapter in which the debtor seeks protection" is bad faith and thus is cause for dismissal of the bankruptcy. *In re Am. Telecom Corp.*, 304 B.R. 867, 869 (Bankr. N.D. Ill. 2004) (Cox, J.); *see also Schwartz*, 799 F.3d at 764 (where the Seventh Circuit confirms that bad faith is cause for dismissal under section 707(a)). As Judge Cox so ably stated in *American Telecom*,

> [t]he Court is of the opinion that Chapter 7 of the Bankruptcy Code was never intended to serve merely as a litigation tool for two sole shareholders holding onto a corporate shell that has not conducted any business activity for two years. It also believes that this bankruptcy case does not adequately implicate any of the policies that the U.S. Bankruptcy Code was enacted to serve. A major consideration that has led other courts to conclude that a Chapter 7 case should be dismissed is the fact that the case is primarily a tool for thwarting the collection efforts of a single creditor holding a disputed money judgment.

*Am. Telecom*, 304 B.R. at 873. This court relied on and cited to *American Telecom* in dismissing the Case.[23]

---

[23]   The District Court, because it had already concluded that this court dismissed under section 305 and not section 707 of the Bankruptcy Code, did not know what to make of this reliance, relegating the court's reliance in that regard to a dismissive footnote. *Etter*, 593 B.R. at 320 n.5 ("Perhaps the bankruptcy court in this case intended to dismiss pursuant to § 707(a) ...."). In so doing, however, the District Court stated that there was no analysis provided under that section, *id.*, holding for naught this court's discussions of *American Telecom* and *Teknek*.

The Seventh Circuit recognized this in *Teknek. Levey v. Systems Div., Inc. (In re Teknek, LLC)*, 563 F.3d 639 (7th Cir. 2009). In *Teknek*, a creditor complained of an allegedly unfair settlement in a case where, according to the creditor, it was the only true creditor and thus the only party harmed by the alleged unfairness. *Id.* at 650. In dismissing the creditor's jurisdictional challenges to the settlement, the Seventh Circuit stated that, "[a]s a procedural matter, the lack of other creditors would have served better as the basis for a motion to dismiss the bankruptcy proceeding than as the basis for the jurisdictional argument ...." *Id.* (citing with favor to *American Telecom*).

This court expressly relied on *Teknek* as well in dismissing this Case.[24]

As noted above, two-party disputes implicate dismissal of cases, *Teknek*, 563 F.3d 650, as such cases go against the collective nature of bankruptcy. *Am. Reserve*, 840 F.2d at 489. Some courts have dismissed two-party disputes under section 305. *Int'l Zinc Coatings*, 355 B.R. at 88. Here, however, where there is no litigation in favor of which to abstain, the more appropriate remedy is to dismiss for cause.

    2.    *This Case is a Two-Party Dispute*

Etter and the Trustee make much of other creditors extant in the Case. The Debtor scheduled only tax two creditors in the Case and did so in error. *See* Order to Show Cause, at ¶ 2.[25] The Motion to Dismiss details how the Debtor filed this Case to prevent a tax sale and that, when all the parties were in agreement as to dismissal, abandoned the real property in question so as to fight the tax purchasers in state court.[26] Mot. to Dismiss, at ¶¶ 3–10. As the property against which the tax purchasers had a claim was abandoned by the estate, however, such purchasers ceased being creditors of the estate upon the abandonment. 11 U.S.C. § 502(b)(3) (*in rem* only secured creditors have a claim against bankruptcy estate only to the extent of "value of the interest of the estate in such property"); *Woodruff*, 600 B.R. at 627 (tax purchasers in Illinois are creditors *in rem*, not *in personam*).

At that point, with no other scheduled creditors and only one claim on file, this Case became a two-party dispute. Recall that the abandonment was done with the consent of all parties. This was not done to manipulate the Case into a two-party dispute status, but to effectuate the parties' agreement which, at the time, was leading toward an agreed, consensual dismissal of the Case.

With only Etter, a secured creditor according to the Etter Claim, left and with the professed purpose of the Case no longer extant, the Debtor was well within its rights to seek dismissal of this

---

[24]    While *Teknek* affirmed the very same District Court judge who issued the Remand Order, the District Court therein stated that it was unable to locate *Teknek*. *Etter*, 593 B.R. at 320 n.5 (referring to the case as "*Tachnet* (phonetic)"). By ruling orally and not providing the full citation, this court did the District Court no favors in this regard.

[25]    The Debtor scheduled the taxing authorities and not the tax purchaser as would have been required, given the tax claims had already been sold pursuant to Illinois law. *See In re Woodruff*, 600 B.R. 616, 627 (Bankr. N.D. Ill. 2019) (Barnes, J.) (tax purchasers hold a claim against the bankruptcy estate if the real estate is property of the estate).

[26]    This litigation is likely why the Debtor thought of the dismissal of the Case in terms of abstention, rather than for cause under section 707.

Case as a two-party dispute when, after the parties' agreement fell apart, all that remained was a dispute between Etter and the Debtor.

Even aside from the foregoing, the court notes that a case need not literally be just two parties to constitute a two-party dispute. The vast majority of two-party dispute opinions involved bankruptcies with other creditors. *See, e.g., Int'l Zinc Coatings*, 355 B.R. at 88. The essence of the disputes in those matters, as it is here, was a dispute between the debtor and one creditor.

The Trustee and each of his professionals—counsel and an accountant—are of course potential creditors of the estate based on the compensation they have accrued since October 2017, when the court last awarded them compensation. 11 U.S.C. §§ 330(a), (b). A review of the last application for compensation by the Trustee's counsel shows that a large portion of those fees, however, were generated in response to Etter's actions. The court could no more consider claims arising in this regard than it could allow Etter to assign a portion of his claim to another party so as to increase the number of creditors.

One further, potential creditor did emerge after the Remand Order was entered. As noted above, the Village sought relief from stay to pursue property of the estate. That relief was granted without objection by any of the parties here and was arguably superfluous, as it appears to relate to the abandoned property. As such, the Village's appearance does not alter the court's conclusion that this is a two-party dispute.

3.    *Section 707 Dismissal of Two-Party Disputes Is Available to Both Debtors and Creditors*

In arguing against dismissal under section 707, both Etter and the Trustee argue that dismissal of a two-party dispute is a creditor remedy and dismissal for cause by a debtor is not appropriate. That argument has no basis in the statute and merits only passing discussion.

Etter's and the Trustee's arguments ask the court to read into the statute a provision that simply does not exist. Section 707(a) makes no mention of a motion and no mention of what party make seek relief thereunder. Further, though section 707(a) does not expressly refer to voluntary dismissals, courts routinely apply it to such a motion. *Schwartz v. Geltzer (In re Smith)*, 507 F.3d 64, 72 (2d Cir. 2007); *Turpen v. Eide (In re Turpen)*, 244 B.R. 431, 434 (B.A.P. 8th Cir. 2000). Any party in interest may move for dismissal under section 707(a). *Weeks*, 306 B.R. at 590.[27]

The court's authority to dismiss two-party cases is as much about protecting the integrity of the bankruptcy system as it is about individual parties' rights. Thus the court could have and, by way of the Order to Show Cause, in fact did raise the issue of section 707(a) dismissal *sua sponte*. 11

---

[27]    Only one of the delineated causes in section 707(a) is limited by Congress to requests by the United State Trustee. 11 U.S.C. § 707(a)(3). By imposing such a limitation in one instance, Congress shows it could have done so for the rest of the causes if it had chosen to. As the Supreme Court has stated, "[w]e have stated time and again that courts must presume that a legislature says in a statute what it means and means in a statute what it says . . . . When the words of a statute are unambiguous, then, this first canon [of interpretation] is also the last: 'judicial inquiry is complete.'" *Conn. Nat'l Bank v. Germain*, 503 U.S. 249, 253–54 (1992); *see also Russello v. United States*, 464 U.S. 16, 23 (1983) (quoting *United States v. Wong Kim Bo*, 472 F.2d 720, 722 (5th Cir. 1972) ("'[W]here Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion.'")). Congress did not. Any reading to the contrary defies the statute.

U.S.C. § 105(a) ("No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, *sua sponte*, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process."); *In re Jakovljevic-Ostojic*, 517 B.R. 119, 125–26 (Bankr. N.D. Ill. 2014) (Barnes, J.) (a bankruptcy court may raise "for cause" dismissal *sua sponte*); *In re Sekendur*, 334 B.R. 609, 617 (Bankr. N.D. Ill. 2005) (Schmetterer, J.) (same).

The parties expressed at the Hearing concerns regarding potential abuses should debtors be allowed to file cases and, once it became clear that it was a two-party dispute, seek dismissal. Putting aside that debtors seek to voluntarily dismiss cases all the time, to address this concern by foreclosing all debtors from seeking such relief—as the parties suggest would be appropriate—is not the right solution. The solution, if one is needed, lies in the court's discretion under section 707, as is discussed herein. Courts can and will exercise discretion to address potential abuses in much the same as is done by this court in this matter.

Abuse of the bankruptcy system can, of course, occur by a party other than a debtor. *Household Bank v. Sales (In re Sales)*, 228 B.R. 748, 754 (B.A.P. 10th Cir. 1999) (explaining the process whereby creditors use adversary proceedings to bolster actions against a debtor in hopes of favorably settling the creditors' claim); *In re Anmuth Holdings LLC*, Case No. 18-43216-CEC, 2019 WL 1421169, at *16 (Bankr. E.D.N.Y. Mar. 27, 2019) (finding abuse of the bankruptcy process by petitioning creditors in an involuntary bankruptcy). Through bankruptcy, a party may seek to use the broader powers of bankruptcy to bolster rights it may not have outside of bankruptcy. *In re Drexel Burnham Lambert Grp., Inc.*, 123 B.R. 702, 711 (Bankr. S.D.N.Y. 1991) (acknowledging that a creditor may take discovery under the Bankruptcy Rules that "is broader than discovery under the Federal Rules of Civil Procedure, and has fewer procedural safeguards" and cautioning that such discovery may only be used for bankruptcy purposes); *Cambridge Analytica, LLC*, 600 B.R. at 752 (preventing discovery under Rule 2004 when it was deemed harassing). In such circumstances, dismissal may be appropriate.

A recent opinion underscores this outcome.

In *Murray*, the Court of Appeals for the Second Circuit affirmed the dismissal of an involuntary proceeding almost entirely on two-creditor dispute and public policy grounds. 900 F.3d at 63. Involuntary cases raise an interesting challenge as, in the right circumstances, such cases may be commenced with minimal creditors and only one active creditor. 11 U.S.C. § 303(b)(2) (allowing a single, unsecured creditor to petition for relief in an involuntary case), but only if the Debtor is "generally not paying such debtor's debts as such debts become due." 11 U.S.C. § 303(h)(1). The wording of that section implies that, while a case might be commenced by a single creditor, it must still be for collective purposes.[28]

There the court concluded that the creditor was using the bankruptcy court as a "rented battlefield or collection agency." *Murray*, 900 F.3d at 63.

---

[28]    Further, Etter, as a secured creditor per the Etter Claim, would likely not be entitled to be a petitioner with respect to the secured part of his claim. As asserted by Etter, the entire Etter Claim is secured. Though he argues to the contrary in portions in his Response, *see* Etter's Resp., at p. 7, the only evidence the court has at this point is the Etter Claim itself, which is asserted entirely as secured.

4.    *Findings Are Not Generally Required*

The foregoing conclusively demonstrates that the court was correct in dismissing this Case for cause. Further, as the discussion in Remand Order itself demonstrates, regardless of its conclusions, this court did not do so without analysis or application to the facts. The failure to issue written findings, however, confused the District Court on several levels.

In the absence of written findings, the District Court was convinced not only to expound upon the law under section 305 but also to rule on a very selective record before it. Keep in mind that there has been in this Case three separate motions to dismiss, all essentially on the same grounds. There also have been, including the hearing on the most recent Motion to Dismiss, but excluding the hearings on the Order to Show Cause, a dozen hearings with respect thereto. During those hearings, the undersigned narrowed the issues before it and directed the parties to the correct standards.[29] True, at the final hearing on the Motion to Dismiss, the court did not restate the entire history of the proceedings before it. The ruling at that hearing was nonetheless more than sufficient to establish cause under section 707(a) to dismiss this Case.

It is, of course, the trial court's duty to determine and apply the law applicable to the matters before it. "Federal courts . . . have an independent obligation to say what the law is," and bankruptcy courts are no different. *Bartlett v. Battaglia*, 453 F.3d 796, 799 (7th Cir. 2006) (citing *Williams v. Taylor*, 529 U.S. 362, 384 (2000)). Assuming that this court ruled under section 305 because that was what the parties briefed, puts paid to the actual ruling of the court and case law cited therein, all of which supported dismissal for cause, not for abstention reasons. It discounts this court's statutory authority to *sua sponte* prevent abuses before it, 11 U.S.C. § 105(a), and ignores the long and complicated record of this Case in favor of a convenient reliance on one transcript and the arguments of only a single party.

As this court has noted, the undersigned did the District Court no favors in ruling only orally and based on the entire record of the Case. But in its criticism of this court, the District Court confuses the need for further findings as cause to remand with an unfulfilled, nonexistent obligation to issue findings in the first instance.

To state, as the District Court appeared to suggest that findings are required in the first instance, is simply incorrect. Findings are almost never required on motions in bankruptcy. Bankruptcy Rule 9014 governs contested matters in bankruptcy and sets forth a litany of other rules that will apply therein. Fed. R. Bankr. P. 9014(a), (c). While the Bankruptcy Code and Bankruptcy Rules do not define what exact a contested matter is, there is little doubt that a contested motion to dismiss would qualify. As such, Bankruptcy Rule 7052 applies. Fed. R. Bankr. P. 9014(c). Rule 7052 incorporates Federal Rule of Civil Procedure 52, which clearly states that "*[t]he court is not*

---

[29]    The court first determined that the Motion to Dismiss was appropriate on September 6, 2017 following oral argument and discussion of the parties where only one reference to the Bankruptcy Code was ever made and it was not to sections 305 or 707. *See* Tr. at p. 29, Sept. 6, 2017 [Dkt. No. 228]. Instead, the parties argued the facts of the case and the equities of allowing the Debtor's case to continue when Etter would be the only party receiving a distribution from the Trustee. *Id.* at p. 47. The Bankruptcy Code was also not mentioned by the parties at the October 11, 2017 hearing when the court finally entered the Dismissal Order after determining compensation of the Trustee and his professionals in light of a verbal objection by Etter. *See* Tr., Oct. 11, 2017 [Dkt. No. 223].

*required to state findings or conclusions* when ruling on a motion under Rule 12 or 56 or, *unless these rules provide otherwise, on any other motion.*") (emphasis added).

It is an objective truth that the bankruptcy court is much busier and has less resources than the District Court. The bankruptcy court in this jurisdiction is, measured by number of cases filed, the busiest of all the bankruptcy courts nationwide. We have, at present, less than half the judges of the second busiest bankruptcy court jurisdiction and bankruptcy judges are afforded less clerks than district court judges. As has been noted in the past, the undersigned alone heard 30,000 original and continued motions in one calendar year. *In re Gilliam*, 582 B.R. 459, 474 n.13 (Bankr. N.D. Ill. 2018) (Barnes, J.).[30] To say that we are overworked is an understatement. The Seventh Circuit understands this. In *Gilliam*, this court noted that the Seventh Circuit had recognized that the bankruptcy court must be allowed, as a result of its volume, to adopt procedures to handle such volume. *In re Geraci*, 138 F.3d 314, 321 (7th Cir. 1998).

That being the situation and as the court cannot predict with unfailing accuracy what cases will be appealed, the court must often rule orally when it might, if it had the lower volume or higher staffing of other courts, be able to make such rulings in writing. And in ruling orally, it must often rely on Bankruptcy Rule 7052 and thereby Civil Rule 52 to do as those authorities allow, not state findings and conclusions, detailed or otherwise, in ruling on a motion. The vast majority of the motions before the court are ruled on orally and with no findings. To do otherwise would be to turn a nearly insurmountable task into an unquestionably impossible one.

When, as happened here, the court does make oral findings that prove to be too scant for the District Court's hindsight, or the court makes no findings as all, the better result is to simply remand for those additional findings. That is what was done in *American Reserve* and, absent the laying of blame and misassumption of applicable law, what occurred here. There has been no error by the bankruptcy court, however, in the first instance by not making findings and conclusions not required by the rules.

C.    Further Proceedings

Given that the Debtor has failed to prosecute the Motion to Dismiss after remand, the court could simply deny the motion with no further conditions. Local Bankr. R. 9013-1(H).

Given, on the other hand, that there is little doubt that this Case has been ripe with unreasonable delay by both the Debtor and Etter (it is a 2013 chapter 7 case that has, as was observed earlier, gone essentially nowhere) and Etter's Response sets forth the prejudice to him as the primary, if not sole, creditor, the court could also dismiss the Case. 11 U.S.C. § 707(a)(1).

Dismissal under section 707(a) is discretionary, however, *BMO Harris Bank N.A. v. Isaacson*, 551 B.R. 376, 381 (N.D. Ill. 2015), and the arguments raised by the United States Trustee cause the court to pause. The United States Trustee argues, as did Etter and the Trustee in a less clear manner, that this Case might have been commenced for a reason other than stated that by the

---

[30]    And yes, that is only motions. Bankruptcy courts hear civil litigation suits, confirmation hearings and other matters not included in that count.

Debtor—to collect and dispose of rents that Etter claims an interest in while under the protections of the Bankruptcy Code.

Pursuing this line of inquiry, as the court sees it based on the arguments of the parties and the United States Trustee and the history of the Case itself, is the only legitimate reason to keep this Case pending. While such allegations, if true, would unquestionably constitute "bad faith" and thus further grounds for dismissal of the Case, if the Debtor has abused the bankruptcy system, that abuse should not be countenanced.

The court's discretion in keeping the Case open despite extant cause under section 707(a) is not boundless, however. Given the abuses in this Case in the past, the Court will allow further proceedings as contemplated by the Remand Order, but only with appropriate constraints. See 11 U.S.C. § 105(a) ("The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title. No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, *sua sponte*, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process."); *Caesars Entm't Operating Co., Inc. v. BOKF, N.A. (In re Caesars Entm't Operating Co., Inc.)*, 808 F.3d 1186, 1188 (7th Cir. 2015) ("Though section 105(a) does not give the bankruptcy court *carte blanche*—the court cannot, for example, take an action prohibited by another provision of the Bankruptcy Code—it grants the extensive equitable powers that bankruptcy courts need in order to be able to perform their statutory duties.") (citations omitted).

At the Hearing, the court stated that it would permit the Case to continue for the limited purpose of investigating and possibly recovering the rents in question, but only if the Trustee retakes the mantle of this Case. It is the Trustee who should be in best position to determine what steps are appropriate in this regard in light of the Trustee's duties to both the creditors and the Debtor. 11 U.S.C. § 704(a)(1) (charging trustee with duties to act expeditiously in a manner compatible with the best interest of parties in interest). That involves balancing the interests of the Debtor, creditors and other parties in interest. *Mele v. First Colony Life Ins., Co.*, 127 B.R. 82, 85 (D.D.C. 1991) ("[T]he trustee's position is like that of a fiduciary to both the debtor and creditors."); 4 Collier on Bankruptcy ¶ 704.01 (15th ed.) ("[I]t is the trustee's duty to both the debtor and the creditor to realize from the estate all that is possible for distribution among the creditors.").

The Trustee must determine whether and what actions are appropriate in pursuing this estate asset, and that asset must be pursued first and foremost for the benefit of the estate—not at the behest of Etter—and only if it is in the interests of the estate creditors including, but not necessarily limited to,[31] Etter, the Trustee and the Trustee's professionals. To ensure that this is done and because such agreements call into question the Trustee's objectivity, the court will approve no side agreements for cost sharing between Etter and the Trustee. Any recovery must be brought into the estate and, only then and as authorized by statute or approved by the court, and following any claims resolution process, distributed to those entitled.

---

[31]    No party has explained why the tax purchasers and/or the Village might not have an interest, possibly a superior interest, in such rents as they stem from the real property in which their liens attach.

Failure to comply with the foregoing will, as the parties should expect, result in the court considering again, *sua sponte* or otherwise, dismissal of this Case for cause, as well as whatever other appropriate measures might exist.

## CONCLUSION

The court, having conducted additional proceedings in accordance with the Remand Order in order to determine whether dismissal of this Case is appropriate, and for all of the foregoing reasons, will not exercise its discretion and dismiss this Case at this point. As such, the Remand Order is satisfied. By separate order entered concurrently herewith, the Order to Show Cause will be concluded and the Motion to Dismiss will be denied, without prejudice.

Dated: September 30, 2019

ENTERED:

_____
Timothy A. Barnes
United States Bankruptcy Judge

<u>Attachment A</u>

Order to Show Cause [Dkt. No. 252]

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | |
| | ) | Case No. 13bk49315 |
| LLC 1 07CH12487, | ) | |
| | ) | Chapter 7 |
| Debtor. | ) | |
| | ) | Judge Timothy A. Barnes |
| | ) | |

ORDER TO SHOW CAUSE

This matter coming on to be heard in the above-captioned case; the court having again given consideration to the Motion of Debtor for Abstention and Dismissal [Dkt. No. 159] filed by LLC 1 07CH12487 (the "Debtor") seeking to voluntarily dismiss this bankruptcy case; and the court upon remand having again considered the docket and taken notice of the following facts:

1.  The Debtor filed for chapter 7 bankruptcy relief in this court on December 31, 2013 [Dkt. No. 1]. The Debtor's Petition, Schedules and accompanying declaration were filed by Tom Makedonski ("Makedonski") as counsel for the Debtor [Dkt. Nos. 1, 4]. Makedonski has not filed any other documents or appeared in court for the Debtor.

2.  On the same day, the Debtor filed its Schedules, listing assets valued at $900,000.00 consisting of five parcels of real property and two secured, governmental tax lien creditors [Dkt. No. 1]. These governmental creditors were apparently listed erroneously as the tax liens had already been sold to third parties [Dkt. No. 17].

3.  On March 28, 2014, the chapter 7 trustee (the "Trustee") filed a motion pursuant to Rule 2004 of the Federal Rules of Bankruptcy Procedure ("Rule 2004") seeking discovery from Joseph Varan, the Debtor's corporate representative [Dkt. No. 7]. That request was granted [Dkt. No. 8].

4.  Thereafter, on February 14, 2015, creditor Kirk Etter ("Etter") filed a Rule 2004 motion seeking to examine the United States Trustee in order to obtain a copy of the transcript of the Trustee's Rule 2004 examination of Joseph Varan [Dkt. No. 11]. Seeking to examine the records of a bankruptcy trustee is not achieved by seeking to examine the United States Trustee. Further, such a request is extraordinary and intrusive. Absent an allegation of malfeasance, such requests are rarely considered even if properly brought as most information can be obtained from the trustee consensually, without the need to invoke court resources in a contested context. While Etter's motion would have therefore been denied on the merits, it was denied without prejudice when Etter's counsel failed to appear at the hearing Etter had scheduled on the motion on February 24, 2015 [Dkt. No. 13].

5.  In the Trustee's Individual Estate Property Record and Report, filed April 27, 2015, the Trustee stated that the Debtor had not been cooperative and that the Trustee believed that there may be undisclosed assets [Dkt. No. 14].

6.  The Trustee, on October 2, 2015, filed a turnover motion seeking an accounting for and turnover of all payments, rents and transfers received from any entity [Dkt. No. 28]. The Trustee's motion was granted by the court on October 20, 2015 [Dkt. No. 30] (the "Turnover Order").

7.  On February 3, 2016, Etter moved for an order requiring the Trustee to turn over the Debtor's accounting or, alternatively, an order compelling the Trustee to account for the assets subject to the Turnover Order [Dkt. No. 38]. Etter cited no authority for its request and the Trustee opposed the motion. In so doing, the Trustee noted that Etter was neither scheduled as a creditor nor had it filed a claim in the case. The court denied Etter's motion on February 10, 2016 [Dkt. No. 39].

8.  Etter subsequently filed a secured proof of claim on February 8, 2016, in the amount of $1,114,204.62 plus interest and listed as security an "Assignment of Certificate of Sale for 415 Roosevelt Rd" [Claim 1-1].

9.  On March 1, 2016, the Debtor filed a motion for voluntary dismissal of this case through new counsel, Adil S. Mohammed ("Mohammed"), citing generally the lack of a need for the collective-action nature of proceedings in a bankruptcy case [Dkt. No. 41] (the "First Dismissal Motion"). Etter objected to the First Dismissal Motion, citing, *inter alia*, the Debtor's failure to comply with the Turnover Order [Dkt. No. 42]. At the hearings on the First Dismissal Motion, the Trustee supported Etter's objection, arguing that dismissal was not in the best interest of creditors. The First Dismissal Motion was continued from time to time in order for the parties to work out agreed terms for dismissal of the case.

10. The Trustee filed a docket notation on March 28, 2016 that he had found assets to be administered for the benefit of creditors [Dkt. No. 44]. This prompted the Clerk of the court to send notice to all creditors that claims against the Debtor had to be filed by June 29, 2016 [Dkt. No. 45]. To date, Etter's secured claim is the only claim filed in the case.

11. On April 18, 2016, Mohammed sought leave to withdraw in the matter [Dkt. No. 48]. On April 20, 2016, John H. Redfield ("Redfield") appeared as replacement counsel for the Debtor [Dkt. No. 51]. Thereafter, Redfield sought and received authority from the court to supplement the First Dismissal Motion [Dkt. Nos. 59, 63].

12. The Trustee filed an objection to Etter's claim on June 21, 2016, arguing that Etter had not established the *prima facie* validity of the claim as Etter had failed to comply with Rule 3001(f) of the Federal Rules of Bankruptcy Procedure [Dkt. No. 61].

13. On July 15, 2016, the Debtor and Etter sought approval of an Agreed Order of Dismissal immediately dismissing the case [Dkt. No. 68] (the "Agreed Dismissal Motion"). The Agreed Dismissal Motion superseded the Dismissal Motion. Among other things, the Agreed Dismissal Motion stated that the Debtor and Etter had entered into a settlement agreement regarding Etter's claim. The Trustee raised only a limited objection to the Agreed Dismissal Motion, that dismissal be conditioned on provision being made for payment of the Trustee and the Trustee's counsel [Dkt. No. 69]. The Trustee requested that, until its

fees were paid, the estate remain open. At the hearing, the Trustee suggested instead that the estate be ordered to abandon its real property to allow the Debtor to contest a tax deed but allow the case to remain open for the fees to be paid.

14. Pursuant to those agreements, the Debtor filed a motion to compel the Trustee to abandon the Debtor's real property, excluding collected rents [Dkt. No. 72]. No party objected. The court granted that motion on August 2, 2016 [Dkt. No. 81]. Also on August 2, 2016, presumably in favor of the agreement with the Trustee, the Debtor withdrew the Agreed Dismissal Motion [Dkt. No. 78].

15. Presumably based on the agreements of the parties, the Trustee withdrew his objection to Etter's claim on August 9, 2016 [Dkt. No. 82]. The Trustee also sought and obtained the court's permission to retain an accountant to prepare the final accounting to close the case [Dkt. Nos. 85, 88].

16. On October 17, 2016, Etter filed another Rule 2004 motion, this time seeking to have the Debtor turn over certain tax returns to the Trustee so that the Trustee could prepare the final tax return for the estate [Dkt. No. 89].[1] At the hearing on the motion, the court noted that such relief should have been sought by the Trustee, not Etter. Because the Trustee stated that he too planned to seek the same relief and granting Etter's motion would save the estate the cost of so doing, the court allowed the request but only if the requested documents were to be given to the Trustee and were limited to those documents necessary to close the case. The court therefore granted the motion on December 1, 2016 with a modified order to that effect, with a final return date to the Trustee set for December 21, 2016 [Dkt. No. 93].

17. At some point after the December 1, 2016 hearing, the limited cooperation between the parties broke down. On February 21, 2017, Etter filed five Rule 2004 motions seeking discovery from the Debtor's tenants, manager and accountant [Dkt. Nos. 94-98] and a motion to compel the Debtor's compliance with previous orders of the court requiring the Debtor to turnover tax returns to the Trustee [Dkt. No. 99] (the "Motion to Compel"). After a hearing on Etter's six discovery motions, Etter filed a supplement to his Motion to Compel, acknowledging that the Debtor had turned over tax information to the Trustee but then seeking to have the Debtor turnover all tax information to Etter so that Etter could independently determine if the Debtor had any unreported income [Dkt. No. 106]. Etter also filed second and third supplements to the Motion to Compel, seeking to have the Debtor turnover postpetition rents and to pay for Etter's attorney's fees and costs [Dkt. Nos. 113, 114]. The Debtor responded with a motion for a protective order [Dkt. No. 122].

---

[1]    Given that the parties were then cooperating, the court presumes that the Trustee sought the Debtor's consensual assistance in order to prepare the returns, rather than use his ability under section 505 of the Bankruptcy Code to have the tax liabilities determined or seek relief from the requirement from the Internal Revenue Service. *See, e.g.,* 11 U.S.C. § 505(b)(2); *see also* Handbook for Chapter 7 Trustees by the United States Trustee's Office, ch. 8(E), available at https://www.justice.gov/ust/handbook-chapter-7-trustees (last visited March 6, 2019). In either case, the responsibility to file the estate's tax returns was on the Trustee, not the Debtor. 26 U.S.C. § 6012(b)(3). The responsibility to complete and file the prepetition debtor's tax returns belongs to the Debtor, but the failure to do so is grounds for dismissal of the case. 11 U.S.C. § 521(e)(2)(B) & (j).

18. At the various hearings on Etter's discovery motions, the Trustee stated that he could not support the motions as he was ready to close the case but for the unsigned tax returns. At a hearing in April 2017, the court cautioned Etter regarding the overuse of the court's limited resources by turning the case into a single creditor's collection action, supplanting the role of the Trustee and Etter's repeated failure to adhere to the court's courtesy copy formalities. When the court questioned the Trustee over the remaining bankruptcy purposes of the case, the Trustee stated that no bankruptcy purpose remained for the case, as any recovery of assets would simply go to pay the costs of recovery incurred by the Trustee.

19. Thereafter the Debtor filed a Motion for Abstention and Dismissal on July 13, 2017, arguing, *inter alia*, that the bankruptcy case was purely a two-party dispute and that no bankruptcy purpose was being served by continued administration of the estate in bankruptcy [Dkt. No. 159] (the "Abstention/Dismissal Motion").

20. On July 17, 2017, the Trustee filed a motion for an order of contempt, citing the Debtor's failure to comply with the Turnover Order [Dkt. No. 163]. At a hearing on the motion, the court questioned the Trustee regarding this change in position and was informed that as Etter had agreed to ensure that the Trustee's costs of collecting on Etter's behalf would be paid, there now existed a bankruptcy purpose to the case.

21. Despite the court's cautions to Etter on overuse of the court's resources and Etter's offer to compensate the Trustee to prosecute the bankruptcy case and collect on Etter's behalf, Etter filed two additional motions seeking to examine two of the Debtor's tenants and the Debtor's bank under Rule 2004 [Dkt. Nos. 155–56, 167]. Etter also filed three motions to compel the Debtor's accountant and the Debtor's tenants to comply with the court's previous Rule 2004 discovery orders [Dkt. Nos. 175–76, 182].

22. On October 11, 2017, the Abstention/Dismissal Motion was heard. On the record set forth above and the parties' ongoing discussion of the bankruptcy purpose of the case and misuse of the court's resources as a collection remedy for a single, secured creditor, the court found cause to dismiss the case under section 707 of the Bankruptcy Code, orally granted the Abstention/Dismissal Motion and entered an order dismissing Debtor's case [Dkt. No. 215] (the "Dismissal Order").

23. Etter subsequently appealed the Dismissal Order to the United States District Court for the Northern District of Illinois (the "District Court") on October 22, 2017 [Dkt. No. 217] (the "Appeal").

24. On November 2, 2017, Redfield filed a motion to withdraw his representation of the Debtor [Dkt. No. 222], which the court granted on November 15, 2017 [Dkt. No. 225]. Upon review of the appellate docket, it appears that the only party to participate in the Appeal was Etter.

25. Etter filed a motion for relief from stay in this court on March 5, 2018, seeking to have this court modify the stay while the District Court determined the Appeal [Dkt. No. 237] (the "Motion for Relief from Stay"). The Motion for Relief from Stay was denied without

hearing pursuant to Rule 4001-1(A) of the Local Rules of the Bankruptcy Court for the Northern District of Illinois (the "Local Rules") for failure to file the required statement. Counsel for Etter, however, appeared in court for the scheduled hearing on March 14, 2018 and asked the court to advise him if the stay was even applicable to the case in light of the Appeal, to which the court declined to issue any advisory opinion, reiterated that the Motion for Relief from Stay was denied for failure to comply with the Local Rules and that the request would have to be refiled with the appropriate fee paid.

26. Later on March 14, 2018, instead of refiling his request for relief from stay, Etter filed a motion to reconsider the court's denial of the Motion for Relief from Stay [Dkt. No. 240]. The court denied the request to reconsider without hearing, citing the court's instruction at the previous hearing to refile the request as a new motion that complied with the Local Rules.

27. This time, instead of refiling Etter's request for relief from stay as a motion for relief from stay, Etter filed a generic motion on March 30, 2018. The actual motion is titled as a Motion for Declaratory Judgment with the docket title of Motion to Excuse Auto Stay [Dkt. No. 242] (the "Declaratory Judgment Motion"). This docketing did not prompt the requirement of a fee for a motion for relief from stay. At the April 12, 2018 hearing on the Declaratory Judgment Motion, counsel for Etter admitted to the court that he filed the Declaratory Judgment Motion in the manner he did to avoid repaying the filing fee for motions for relief from stay. The court advised Etter's counsel that under Rule 7001 of the Federal Rules of Bankruptcy Procedure, an adversary proceeding was required for declaratory judgment, which also required payment of a filing fee. The court denied the Declaratory Judgment Motion and cautioned Etter's counsel that any further attempts to avoid paying filing fees despite using the court's resources would be denied without hearing and with prejudice.

28. On Sunday, September 30, 2018, the District Court issued a Memorandum Opinion and Order explaining its confusion with the Dismissal Order and the court's reasons therefore, and vacating the Dismissal Order and remanding the case to the bankruptcy court for findings sufficiently detailed to enable the District Court to engage in review [Dkt. No. 245].

29. Thereafter the case lay idle, until recently. On February 24, 2019, Etter filed a new motion to compel the Debtor to comply with earlier discovery orders [Dkt. No. 246] (the "Second Motion to Compel"). Before that motion could be heard, Etter filed a motion for civil contempt and a motion for sanctions under Rule 9011 of the Federal Rules of Bankruptcy Procedure and scheduled both motions for hearing in violation of the notice requirements in Rule 9013-1(D) & (E) of the Local Rules [Dkt. Nos. 247 & 248]. The latter of the two motions was filed 3 hours before the scheduled hearing time and relied on mail notice sent that morning to the Debtor.

30. On March 5, 2019, at a hearing on the Second Motion to Compel, the court continued the Second Motion to Compel to May 14, 2019 at 11:00 a.m. so the court could issue this Order to Show Cause in order to comply with the District Court's order. In face of dismissal of the two improperly noticed motions under Rule 9013-1(G) of the Local Rules, Etter withdrew the latter two motions.

Now, therefore, and in light of the foregoing,

IT IS HEREBY ORDERED that any interested party shall appear before the court on **May 14, 2019**, at **11:00 a.m.** (the "Show Cause Hearing") and show cause why the court should or should not dismiss this case for cause under 11 U.S.C. § 707.

Other than the Office of the United States Trustee (the "United States Trustee"), any party supporting or opposing dismissal *shall*, in writing and no later than **April 2, 2019**, file with the court a response to the Order to Show Cause (a "Response") and serve notice of the Response in accordance with all applicable local and national rules on all parties in interest in this case. All Responses must, at a minimum, address the standards under 11 U.S.C. § 707 and why a bankruptcy case should remain open to allow a single secured creditor and the trustee acting on his behalf to engage in collection actions against the Debtor and its principals. Any response by Etter or the Trustee must also address why the case should be continued for compliance with existing orders when no prejudice or harm has been demonstrated for noncompliance. All Responses must comply with the local and national rules governing filings with this court. *Only one Response per party is permitted. Failure to file a Response by a party shall be considered a waiver of such party's right to oppose the dismissal of the case.*

Any party filing a Response *may* reply in writing to another party's Response on or before **May 2, 2019**, by filing such reply (a "Reply") with the court and serving notice of the filing in accordance with all applicable local and national rules on all parties in interest in this case. *Only one Reply per party is permitted.* No party is required to file a Reply.

Other than a response to the Motion to Compel, which may be filed by **April 2, 2019** but is not required, the court will consider no other filings in this case prior to the resolution of this Order to Show Cause. Filings made after deadlines set forth herein will not be considered.

The United States Trustee may, but is not required to, file a Response and/or Reply in accordance with the requirements set forth above. Regardless of whether a Response and/or Reply is filed by the United States Trustee, the court requests that a representative of the United States Trustee appear at the Show Cause Hearing. The Trustee's personal attendance at the Show Cause Hearing is required.

***Any party that fails to appear and show cause in accordance with the terms of this Order to Show Cause will have waived that party's right to support or oppose the dismissal of this case.***

Dated:   0 7 MAR 2019                   ENTERED:

                                        _____
                                        Judge Timothy A. Barnes